**In re INTERNATIONAL PROFIT ASSOCIATES, INC.; International Tax Advisors, Inc.; and IPA Advisory and Intermediary Services, LLC, Relators.**

No. 08–0238.

Supreme Court of Texas.

Jan. 9, 2009.

J. Ken Nunley, Chad Michael Upham, Kelly Putney Rogers, Nunley Jolley Cluck Aelvoet, LLP, Boerne, TX, for Realators.

Raymond L. Thomas, Rebecca Vela, Tracy Lynn Altman Spillman, Kittleman, Thomas & Gonzalez, P.L.L.C., McAllen, TX, for Real Party in Interest.

PER CURIAM.

In this original proceeding, we consider whether the trial court abused its discretion by refusing to enforce forum-selection clauses. We conclude that it did and grant relief.

In March 2004, McAllen Tropicpak, Inc. entered into separate contracts with International Profit Associates, Inc., IPA Advisory and Intermediary Services, LLC, and International Tax Advisors, Inc. (collectively "IPA"), three related management and tax consulting firms. The contracts called for IPA to provide Tropicpak with (1) general business consulting services, (2) business operations and financial assessment services, and (3) tax consulting services. Each agreement is two pages in length and contains the following clause just above the signature line in one contract and a few lines above the signature line in the others: "It is agreed that exclusive jurisdiction and venue shall vest in the Nineteenth Judicial District of Lake County, Illinois, Illinois law applying."

After execution of the agreements, according to Tropicpak, IPA made business recommendations, including that Tropicpak hire David Salinas to help increase sales. Tropicpak hired Salinas, who allegedly embezzled large sums of money from the company. Tropicpak sued Salinas, IPA employee James Gibson, and IPA in Hidalgo County. The allegations as to IPA were that it negligently provided pro-

fessional services, committed fraud and/or fraudulent inducement, made negligent misrepresentations, and breached its duty of good faith and fair dealing. IPA answered and on January 6, 2006 filed a motion to dismiss based upon the forum-selection clauses. A hearing was held on May 2, 2006, but the trial court failed to rule on the motion until after a second hearing in May 2007. The trial court denied IPA's motion, but the written order erroneously referred to IPA's motion as a "motion to compel" and was dated May 29, 2006, instead of May 29, 2007. After various attempts by IPA to obtain entry of a correct order through the summer and fall, the trial court signed a corrected order dated October 23, 2007. IPA obtained a copy of the corrected order by fax in December 2007.

IPA sought a writ of mandamus from the court of appeals, complaining that the trial court abused its discretion in denying the motion to dismiss. The court of appeals denied relief. 274 S.W.3d 696.

In this Court, IPA again argues that the trial court abused its discretion by not enforcing the forum-selection clauses. Tropicpak responds that IPA waived its right to mandamus relief because it delayed asserting its rights, and that even if IPA did not waive its right to seek mandamus relief, the trial court did not abuse its discretion in denying the motion because (1) the clauses are unenforceable as they are ambiguous in general, and in the alternative, the clauses are ambiguous as to whether Tropicpak's tort claims are within the scope of the clauses; (2) IPA procured the clauses through overreaching or fraud; (3) the interest of Tropicpak's witnesses and the public favor litigating this case in Texas; and (4) enforcement of the clauses would effectively deprive Tropicpak of its day in court.

 Forum-selection clauses are generally enforceable, and a party attempting to show that such a clause should not be enforced bears a heavy burden. *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 232 (Tex.2008) (per curiam) (citing *In re AIU Ins. Co.*, 148 S.W.3d 109, 113 (Tex.2004)). A trial court abuses its discretion if it refuses to enforce a forum-selection clause unless the party opposing enforcement clearly shows that (1) the clause is invalid for reasons of fraud or overreaching, (2) enforcement would be unreasonable or unjust, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial. *Id.* at 231–32; *AIU,* 148 S.W.3d at 112; *see also M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15–17, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Mandamus relief is available to enforce forum-selection agreements because there is no adequate remedy by appeal when a trial court abuses its discretion by refusing to enforce a valid forum-selection clause that covers the dispute. *Lyon,* 257 S.W.3d at 231; *see also AIU,* 148 S.W.3d at 115–20.

In asserting that IPA waived its right to seek mandamus by not diligently pursuing such relief, Tropicpak focuses on three time periods. The first is the time between January 9, 2006 when IPA filed its motion to dismiss and May 2, 2006 when the trial court first heard the motion. The second is the period of almost eight months between May 29, 2007 when the trial court signed the erroneous order on IPA's motion to dismiss, and January 22, 2008 when IPA filed its mandamus petition with the court of appeals. The third is the period of thirty-eight days between the time the court of appeals denied relief and the filing of IPA's petition seeking relief from this Court.

■ Although mandamus is not an equitable remedy, its issuance is controlled largely by equitable principles. *In re Users Sys. Servs., Inc.*, 22 S.W.3d 331, 337 (Tex.1999); *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex.1993). One such principle is that "equity aids the diligent and not those who slumber on their rights." *Rivercenter*, 858 S.W.2d at 367 (quoting *Callahan v. Giles*, 137 Tex. 571, 155 S.W.2d 793, 795 (1941)). Thus, delaying the filing of a petition for mandamus relief may waive the right to mandamus unless the relator can justify the delay. *Id.* at 367–68.

■ Tropicpak relies on *Rivercenter*, 858 S.W.2d at 367, where mandamus was denied to a party who delayed seeking mandamus relief for over four months, showed no diligent pursuit of its rights, and provided no justification for the delay. Here, Tropicpak claims that the gap of almost four months between the filing of IPA's motion to dismiss and its being heard bars equitable relief. However, Tropicpak does not reference any actions by IPA during the gap that indicate IPA lacked interest in or did not intend to press its motion to dismiss. IPA, on the other hand, references separate written requests for a hearing that it made in February and March. A hearing on the motion to dismiss was originally set for April 3, 2006 but was continued without objection to May 2, 2006, when the first hearing actually took place. The record shows that IPA timely pursued a hearing on its motion to dismiss and provided justification for the four-month delay. *See id.*

As to the second period of time Tropicpak references, on May 29, 2007, the trial court signed an order that erroneously referenced a motion to compel and was incorrectly dated May 29, 2006. Tropicpak furnished the incorrect order to the trial court. When IPA received the order, it contacted Tropicpak, who indicated that it had no objection to presenting the trial court with a revised order. IPA faxed a proposed revised order to Tropicpak on July 30, 2007. IPA received no response from Tropicpak, and on October 1, 2007, IPA filed a motion to enter a corrected order. Tropicpak then agreed to the corrected order, and the trial court signed a revised order on October 23, 2007. IPA asserts, without contest by Tropicpak, that despite repeated requests by IPA and assurances from the trial court that IPA would receive the corrected copy in the mail, the trial court failed to provide IPA with a copy until it was faxed on December 5, 2007. IPA filed its petition with the court of appeals on January 22, 2008, and the court of appeals denied the petition on February 21, 2008. IPA then filed its petition for relief in this Court on March 31, 2008.

IPA's actions following entry of the May 29, 2007 order do not indicate the type of delay that forfeits a party's right to mandamus relief. IPA could have been more diligent in its efforts to have a corrected order entered, but Tropicpak does not claim that IPA took any actions inconsistent with pressing its motion to dismiss or seeking mandamus relief, and it was the errors and delays of the trial court and Tropicpak that hindered IPA's ability to initiate mandamus proceedings. Nor was delay in filing for mandamus relief from the court of appeals from December 5, 2007, when it received a copy of the corrected order, until January 22, 2008 unreasonable. Neither was the thirty-eight day time period between the court of appeals' denial of mandamus relief and IPA's filing in this Court such an unreasonable time under this record as to waive IPA's right to seek equitable relief. Based on the explanations provided by IPA and the record presented, we conclude that IPA did

not "slumber on its rights" to the extent it waived its right to seek mandamus relief. *In re SCI Tex. Funeral Servs., Inc.*, 236 S.W.3d 759, 761 (Tex.2007) (per curiam).

Moving to the merits of IPA's petition, we first address Tropicpak's arguments as to ambiguity. Tropicpak urges that the forum-selection clauses do not mention "litigation," do not mention what, if anything, is to be brought in the Nineteenth Judicial District Court of Lake County, Illinois, and are so vague and ambiguous on their face they should not be enforced. In the alternative, Tropicpak argues that the clauses are ambiguous as to the scope of claims they cover and do not clearly govern the various tort claims Tropicpak asserts. We disagree with both arguments.

 A contract is ambiguous when it is susceptible to more than one reasonable interpretation. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005). The forum-selection clauses in this case are not susceptible to more than one reasonable interpretation. Each clause specifies that exclusive jurisdiction and venue shall vest in the Nineteenth Judicial District of Lake County, Illinois. The only reasonable interpretation is that the clauses fix jurisdiction and venue for judicial actions between the parties in a specific location and court in Illinois. Whether the clauses unambiguously select the Illinois court as the forum for all tort claims between the parties is a question we need not address because, as we note below, the claims asserted by Tropicpak arise from its contracts with IPA.

As to whether Tropicpak's claims sound more in contract or tort, we have drawn analogies between forum-selection clauses and arbitration clauses. *AIU*, 148 S.W.3d at 115 (recognizing an arbitration clause as a type of forum-selection clause); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 134–35 (Tex.2004) (holding that determination of enforceability of forum-selection and arbitration clauses is the same when a party alleges fraudulent inducement); *see also Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 534, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995) (observing that arbitration provisions are a subset of forum-selection clauses). We held in *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131–32 (Tex.2005), a case dealing with arbitration clauses, that whether claims seek a direct benefit from a contract turns on the substance of the claim, not artful pleading. We said that a claim is brought in contract if liability arises from the contract, while a claim is brought in tort if liability is derived from other general obligations imposed by law. *Id.* at 132. The principles explicated in *Weekley Homes* apply here. Additionally, we look to federal law for guidance in analyzing forum-selection clauses. *See AIU*, 148 S.W.3d at 111–14. The Court of Appeals for the Fifth Circuit recently reiterated that it has foresworn "slavish adherence to a contract/tort distinction; to hold to the contrary would allow a litigant to avoid a forum-selection clause with 'artful pleading.'" *Ginter ex. rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 444 (5th Cir.2008). The court called for a common-sense examination of the claims and the forum-selection clause to determine if the clause covers the claims. *Id.* at 444–45. The Fifth Circuit's approach is instructive: determining whether a contract or some other general legal obligation establishes the duty at issue and dictates whether the claims are such as to be covered by the contractual forum-selection clause should be according to a common-sense examination of the substance of the claims made. *See Weekley Homes*, 180 S.W.3d at 131–32; *see also In re Kaplan*

*Higher Educ. Corp.,* 235 S.W.3d 206, 209 (Tex.2007) (per curiam).

■ Tropicpak contends that its claims are outside the scope of the contracts because none of the contracts called for IPA to make employment recommendations. But Tropicpak claims no relationship with IPA apart from the contracts, and the contracts express no limitation on the extent or form of IPA's consulting services. Tropicpak's pleadings allege that during the course of IPA's engagement, IPA provided advice to Tropicpak and made a series of recommendations, one of which was to hire Salinas to help with sales. Each of Tropicpak's claims relate to its employment of Salinas. In the contract for business consulting services, the "scope of engagement" section provides

> [T]he Project Manager will prepare a Project Plan encompassing the objectives and scope of the engagement. Due to the fact that each Client's business is unique, Consulting Services' work is custom designed around each objective, giving consideration to the specific nature of Client's business and personnel.

The only limitation in the contract pertaining to IPA's work is that any proposal be presented to Tropicpak prior to implementation. The agreement does not draw a bright-line limit on the scope of work to be performed by IPA. Instead, it recognizes that IPA's work was to be custom designed around Tropicpak's business. The recommendation to hire a new employee to bolster Tropicpak's sales was a proposal that IPA made as an integral part of its consulting services, and Tropicpak alleges as much in its pleadings. No matter how Tropicpak characterizes or artfully pleads its claims, the claims and alleged damages arise from the contractual relationship between the parties, not from general obligations imposed by law. We conclude that Tropicpak's claims are within the scope of

the forum-selection clauses. *See Weekley Homes,* 180 S.W.3d at 131–32.

■ We next consider whether IPA obtained Tropicpak's agreement to the forum-selection clauses through overreaching or fraud. Tropicpak claims that because an IPA representative initially contacted Rodriguez in her Texas office, accepted payment in her Texas office, and disclosed that the representative resided in Texas, IPA inferred that the contracts and resolution of any disputes related to them would be limited to Texas. Tropicpak urges that under the circumstances, IPA had a duty to call the contents of the forum-selection clauses to Rodriguez's attention and that the failure to do so was "overreaching or fraud."

■ We analyze claims of "overreaching" in the context of whether the contract results in unfair surprise or oppression to the party alleging overreaching. *Lyon,* 257 S.W.3d at 233. A party asserting that it was fraudulently induced into entering an agreement must show that (1) the other party made a material representation, (2) the representation was false and was either known to be false when made or made without knowledge of its truth, (3) the representation was intended to be and was relied upon by the injured party, and (4) the injury complained of was caused by the reliance. *See Am. Tobacco Co., Inc. v. Grinnell,* 951 S.W.2d 420, 436 (Tex.1997). Failing to disclose information is equivalent to a false representation only when particular circumstances impose a duty on a party to speak, and the party deliberately remains silent. *Bradford v. Vento,* 48 S.W.3d 749, 755 (Tex.2001) (citing *SmithKline Beecham Corp. v. Doe,* 903 S.W.2d 347, 353 (Tex.1995)). Whether such a duty to speak exists is a question of law. *Id.*

Tropicpak does not argue that it was surprised by the presence of the forum-selection clauses in the contracts; it only contends that the clauses were not affirmatively disclosed by IPA's representative. Nor does Tropicpak argue that it is somehow oppressed by the clauses. As did the facts in *Lyon*, 257 S.W.3d at 230, these facts show that IPA offered to do business on a particular basis as set out in the two-page contracts, and Tropicpak accepted the offer.

■ Nor does the record establish that IPA fraudulently induced Tropicpak to accept the forum-selection clauses by not separately disclosing the clauses. It is presumed that Tropicpak understood and agreed to the contents of its contracts. *See In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex.2007) (per curiam). The parties were businesses dealing at arms length, and Rodriguez testified that she read each agreement and had the opportunity to discuss the contracts prior to signing. The clauses were parts of agreements that were each two pages in length, were located in close proximity to the signature elements, and were in the same font style and size as all other provisions. Under these circumstances, IPA did not have a duty to separately disclose each particular clause of the agreements—including the forum-selection clauses. The fact that the contracts were signed and payments were made in Tropicpak's offices and the IPA representative lived in Houston, without more, does not change this conclusion. Tropicpak presented no evidence that IPA fraudulently induced Tropicpak to enter the contracts. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex.2001) (holding that a home buyer's allegations that the seller (1) made no reference to an arbitration clause in its advertisements and pre-sale statements and (2) did not adequately explain the consequences of signing the agreement did not constitute fraud). Tropicpak has not met its burden of proving that enforcement of the forum-selection clauses should be barred on the basis of overreaching or fraud.

■ Next, we address Tropicpak's contention that the interests of its witnesses and the public justify the trial court's refusal to enforce the forum-selection clauses. Tropicpak argues that forcing its witnesses—all of whom it claims reside in Texas—to travel to Illinois for trial would be unfair. Further, Tropicpak asserts that the public interest mandates that trial be held in Texas because all events giving rise to this suit occurred within the state.

We have previously considered similar arguments regarding the location of witnesses. *See AIU*, 148 S.W.3d at 112. In *AIU*, a corporation with its principal place of business in Texas sued its insurer in Texas despite a forum-selection clause in the insurance agreement that named New York as the forum for dispute resolution. *Id.* at 111. The insured argued that its witnesses would be seriously inconvenienced by having to travel to New York for trial. *Id.* at 112. We determined that because New York is not a "remote alien forum" and the insured could have foreseen having to litigate a claim in New York as a result of entering into the insurance agreement, the insured did not meet its burden of proving that the forum-selection clause should not be enforced. *Id.* at 113–14.

This case is similar to *AIU*. Tropicpak could have foreseen litigation in Illinois for claims arising out of its contracts with IPA, and Illinois is not a remote alien forum for purposes of forum-selection agreements. *Id.* Tropicpak has not demonstrated that the interests of witnesses residing in Texas should override the parties' choice of a sister state as the venue in which it would resolve disputes with IPA.

In regard to the public interest and forum-selection clauses, we have held that policy considerations weigh in favor of enforcing valid forum-selection clauses absent a statute that requires suit to be brought or maintained in Texas. *See In re AutoNation, Inc.,* 228 S.W.3d 663, 669 (Tex.2007) (citing *AIU,* 148 S.W.3d at 114). Tropicpak does not assert that a statute precludes enforcement of these forum-selection clauses; thus, the public interest does not prevent enforcement of the clauses.

Tropicpak combines its arguments regarding convenience of litigation and deprivation of its day in court if the forum-selection clauses are enforced. It points out that Hidalgo County is where IPA solicited Tropicpak's business, the agreements were executed, its witnesses are located, payments were made to IPA, Tropicpak's president resides, and the companies used by Salinas to convert money and products from Tropicpak are located. Tropicpak also points to the expense of pursuing litigation in Illinois and the fact that it would be forced to try two separate lawsuits since Salinas is not subject to jurisdiction in Illinois.

By agreeing to the forum-selection clauses, Tropicpak represented to IPA that the agreed forum would not be so inconvenient that enforcing the clause would deprive Tropicpak of its day in court. *See Lyon,* 257 S.W.3d at 234. To avoid enforcement of its agreements and the clauses, Tropicpak must have proved that special and unusual circumstances developed after the contracts were executed and that litigation in Illinois would now be so gravely difficult and inconvenient that Tropicpak would for all practical purposes be deprived of its day in court. *Id.; AIU,* 148 S.W.3d at 113. This record does not demonstrate such proof. First, it is not a special or unusual circumstance for many, or even most, of the fact witnesses in a lawsuit to reside somewhere other than in the area where the suit is brought. Next, assuming Tropicpak's argument that if the clauses are enforced, it will have to pursue two suits—one against IPA in Illinois and one against Salinas in Texas—is correct, that is not the type of unusual and special circumstances that show litigating in the contracted-for forum will be so gravely difficult and inconvenient Tropicpak will be deprived of its day in court. Litigation over contractual business obligations frequently involves more parties than the two principals to the contract. If all it takes to avoid a forum-selection clause is to join as defendants local residents who are not parties to the agreement, then forum-selection clauses will be of little value. Tropicpak cannot be faulted for wanting to sue parties who allegedly damaged it. But the fact there are several parties who may be sued in Texas because they have potential liability to Tropicpak, even though Tropicpak agreed to sue IPA in Illinois, are not such special and unusual circumstances that they negate the forum-selection clauses. *See Lyon,* 257 S.W.3d at 234.

In conclusion, Tropicpak presented no evidence to overcome the presumption that the forum-selection clauses are valid. Neither did it prove that its claims do not fall within the scope of the clauses. The trial court clearly abused its discretion in denying IPA's motion to dismiss.

Without hearing oral argument, we conditionally grant mandamus relief and direct the trial court to vacate its order denying IPA's motion to dismiss and to grant the motion. *See* Tex.R.App. P. 52.8(c). We are confident the trial court will comply with our directive, and the writ will issue only if the trial court fails to do so.