Gayen HANCOCK et al., Plaintiffs,

v.

AMERICAN TELEPHONE AND
TELEGRAPH COMPANY,
INC., et al., Defendants.

No. CIV–10–822–W.

United States District Court,
W.D. Oklahoma.

Aug. 11, 2011.

Jason E. Robinson, Lydia J. Barrett, Richard L. Denney, Denney & Barrett, Norman, OK, Larry E. Coben, Coben & Associates, Scottsdale, AZ, Leon R. Russell, Russell & Shiver, Dallas, TX, Marcus W. Viles, Sr., Mark C. Menser, Viles and Beckman, Myers, FL, Robert M.N. Palmer, Law Offices of Palmer Oliver PC, Springfield, MO, for Plaintiffs.

1. This defendant is named in the style as Southwestern Bell Telephone Company, L.P.

2. As a result of corporate reorganization, effective December 31, 2010, AT & T Services, Inc., is the successor-in-interest to AT & T Operations, Inc., for purposes of this litigation. *See* Doc. 88.

3. The claims of co-plaintiffs James Bollinger, David Cross and Montez Mutzig are addressed in separate Orders issued this date.

Cindy D. Hanson, James H. Walker, John P. Jett, Kilpatrick Townsend & Stockton Llpstockton LLP, Atlanta, GA, Curtis M. Long, Fellers Snider Blankenship Bailey & Tippens, Tulsa, OK, for Defendants.

## *ORDER.*

LEE R. WEST, District Judge.

This matter comes before the Court on the Motion to Dismiss or Transfer filed by defendant Southwestern Bell Telephone Company ("SWB")[1] and AT & T Operations, Inc. ("AT & T Ops"),[2] pursuant to Rule 12(b)(3), F.R.Civ.P., and title 28, section 1404(a) of the United States Code. Plaintiff Gayen Hancock has responded in opposition.[3] Based upon the record, including the defendants' reply and Hancock's sur-reply, the Court makes its determination.

In addition to the two movants, Hancock together with co-plaintiffs David Cross, Montez Mutzig and James Bollinger has sued eleven (11) other entities: American Telephone and Telegraph Company, Inc.,[4] BellSouth Telecommunications, Inc., Pacific Bell Telephone Company, Illinois Bell Telephone Company, Indiana Bell Telephone Company, Inc., Michigan Bell Telephone Company, Nevada Bell Telephone Company, The Ohio Bell Telephone Com-

4. In the complaint, this defendant is identified as "American Telephone and Telegraph Company, Inc., formally known as AT & T, Inc." Doc. 1 at 4, ¶ 12. The defendants have contended that "[t]here is no entity named 'American Telephone and Telegraph Company, Inc.,'" Doc. 53 at 13 n. 7, and that the plaintiffs have arguably "intended to name 'AT & T Inc.,' the telecommunications holding company and parent of other AT & T entities." *Id.*

pany, Wisconsin Bell, Inc., The Southern New England Telephone Company and AT & T Southeast, Inc.

The plaintiffs have sought to represent a nationwide class of consumers who purchased and/or subscribed to services designed, manufactured, marketed, advertised and sold by the various defendants under the brand name "U-verse." *See* Doc. 1 at 2, ¶ 1; *e.g., id.* at 5, ¶ 26. The plaintiffs have complained that U-verse service, which generally includes three bundled or packaged components—television ("TV"), voice over Internet protocol ("VOIP" or "Voice") and Internet, is "plagued by defects and deficiencies," *id.* at 2, ¶ 2, and although "hyped and over-promoted as a technological advance . . . [has] fail[ed] of its essential purpose. . . ." *Id.* ¶ 3.

The plaintiffs have asserted claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., as well as under state law for fraud, civil conspiracy, conversion, unjust enrichment, breach of the implied covenant of good faith and fair dealing and breach of contract, and they have sought monetary, equitable and declaratory relief.

Hancock is a citizen and resident of the State of Oklahoma. *E.g.,* Doc. 1 at 3, ¶ 8. He purchased or subscribed to U-verse on or about May 15, 2010, after solicitation by a door-to-door salesperson. *E.g., id.* at 10, ¶ 28.

Because U-verse services are provided by the subsidiary operating company ac-

cording to the residence of the consumer, Hancock purchased or subscribed to services provided by SWB, the regional operating company for Oklahoma.[5] AT & T Ops "is the entity ultimately responsible for AT & T U-verse in the area[ ] provisioned by [SWB]. . . ." Declaration of Jeff Weber (October 20, 2010) at 2, ¶ 5.

The three U-verse components are governed by terms of service. The two components, TV and VOIP, are governed by a single set of terms and service: "AT & T U-verse Voice and TV General Terms of Service" ("TV/Voice TOS"). Internet service is governed by separate terms of service: "AT & T High Speed Internet Terms of Service/att.net Terms of Use" ("Internet TOS").

In the instant motion, SWB and AT & T Ops have moved the Court to dismiss Hancock's TV/Voice-related claims under Rule 12(b)(3), *supra,* or, alternatively, to transfer such claims to the United States District Court for the Western District of Texas under section 1404(a).

SWB and AT & T Ops have contended that Hancock was required to, and did, accept the TV/Voice TOS, including its forum selection provision,[6] before the U-verse TV and/or VOIP services were installed at his residence. The TV/Voice TOS, which was in effect at the time Hancock purchased, or subscribed to, U-verse services and on which these defendants have relied, reads in pertinent part:

These TOS and the relationship between you and AT & T will be governed by the

---

5. *See* Declaration of Steven Threlkeld (October 19, 2010) at 2, ¶ 5 ("Southwestern Bell Telephone Company is the regional operating company that provides services to customers in Oklahoma"). *See also* Doc. 69 at 7 (Hancock "made a direct purchase from SW Bell").

6. The plaintiffs' assertion that "[t]he TOS appear to have inconsistent forum-selection terms," Doc. 69 at 22, fails to recognize that Internet service and TV/Voice service are governed by two different sets of terms of service.

laws of the State of Texas without regard to its conflict of law provisions,[7] and you and AT & T agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Bexar County, Texas.[8]

Doc. 58–5 at 45, ¶ 19(c).

Although forum selection clauses, like the foregoing clause, "are prima facie valid and should be enforced ...," *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the existence of such a clause neither imposes an absolute duty, nor endows an absolute right, to litigate the dispute in the named forum. Rather, a clause's applicability as well as its enforceability in a given case depends upon the clause's classification-mandatory or permissive, *e.g., Excell, Inc. v. Sterling Boiler & Mechanical, Inc.*, 106 F.3d 318, 321 (10th Cir.1997), and upon its reasonableness. *E.g., Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1344 (10th Cir.1992) (forum selection clause enforced "unless shown to be unreasonable") (citations omitted).

"'Mandatory forum selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum.'" *K & V Scientific Co. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 498 (10th Cir. 2002) (quoting *Excell, Inc.*, 106 F.3d at 321). Permissive forum selection clauses, "'[i]n contrast, ... authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere.'" *Id.* (quoting *Excell*, 106 F.3d at 321).

The Court finds that the forum selection clause set forth in the TV/Voice TOS in effect at the time Hancock purchased and subscribed to U-verse services is mandatory. The first phrase of clause, the choice of law provision, dictates that the TV/Voice TOS and the relationship between the consumer and AT & T will be governed by Texas law. The second, and generally dispositive phrase, specifies that both the customer "and AT & T agree to submit to the personal and exclusive jurisdiction of the courts located within the

---

**7.** In *Stewart Organization, Inc. v. Ricoh Corporation*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), the United States Supreme Court held that "federal law, specifically 28 U.S.C. § 1404(a), [on which SWB and AT & T Ops have relied in the alternative,] governs the ... Court's decision whether to give effect to the parties' forum selection clause and transfer this case...." *Id.* at 32, 108 S.Ct. 2239. Although the Supreme Court did not address the effect of a choice-of-law provision, as in the instant forum selection clause, the United States Court of Appeals for the Tenth Circuit has held that "when the contract contains a choice-of-law clause, a court can effectuate the parties' agreement concerning the forum only if it interprets the forum selection clause under the chosen law." *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 428 (10th Cir.2006).

Under Texas law, the chosen law, courts are required to look to federal law in interpreting forum selection clauses. *E.g., In re International Profit Associates, Inc.*, 274

S.W.3d 672, 677 (Tex.2009). Thus, in accord with *Ricoh. Yavuz* and extant Texas case law, the Court has applied federal law in determining whether the instant forum selection clause should be enforced.

**8.** The instant forum selection clause, which provides for "exclusive jurisdiction [in] ... the courts located within the county of Bexar County, Texas," Doc. 58–5 at 45, ¶ 19(c), does not specify whether suit must be brought in state or federal court. SWB and AT & T Ops have therefore moved alternatively for dismissal under Rule 12(b)(3), F.R.Civ.P. (should such language require suit be brought in state courts "located within" Bexar County), or for transfer under section 1404(a) (should such language authorize the lawsuit be transferred to the United States District Court for the Western District of Texas, San Antonio Division, which is "located within" Bexar County).

county of Bexar County, Texas." Doc. 58–5 at 45, ¶ 19(c).

Such language is unambiguous, unequivocal and obligatory. *E.g., Milk 'N' More,* 963 F.2d at 1345–46 (clause stating " 'Venue shall be proper . . . in Johnson County, Kansas,' " deemed mandatory). Accordingly, venue in any forum other than a "court[ ] located within the county of Bexar County, Texas," is improper, *e.g., K & V Scientific Co.,* 314 F.3d at 499 (circuits agree that where venue is specified with mandatory language, clause is enforced), unless Hancock, as the party resisting enforcement of the clause, can demonstrate that enforcement in this case would be "unfair or unreasonable." *E.g., Excell, Inc.,* 106 F.3d at 321. *See The Bremen,* 407 U.S. at 10, 92 S.Ct. 1907 (forum selection clauses should be enforced unless shown by resisting party to be unreasonable).

█ In an attempt to do so, Hancock has first argued that he cannot be bound by the terms of this clause because there is no "empirical and verifiable evidence that [he] . . . ever accepted or agreed to the forum selection clause." Doc. 69 at 3; *e.g.,* Doc. 1 at 22, ¶ 77 (plaintiffs "never provided copy [of Terms of Service]").[9]

David Saigh is an area manager for network process and quality in the AT & T Network Operations business unit of AT & T Ops, and he is charged with the development of the methods and procedures used by premises technicians in the installation of U-verse services. Saigh has stated

(1) that "[w]hen a customer places an order for U-verse, it is sent to the Global Craft Access System ('GCAS') where [p]remises [t]echnicians receive and review the order[,]" Declaration of David Saigh (October 19, 2010) at 3, ¶ 6 ("Saigh Declaration");

(2) that "[s]tandard installation practice requires the [p]remises [t]echnician to . . . provide a Welcome Kit containing the printed TV/Voice TOS to the customer for the customer's review[,]" *id.* ¶ 7;

(3) that "[a]ccording to standard installation procedure, the [p]remises [t]echnician provides the customer with an opportunity to review the TV/Voice TOS before the installation of U-verse services and has the customer acknowledge and agree to the TV/Voice TOS on the technician's laptop with the GCAS web application[,]" *id.* ¶ 8; and

(4) that "[a]cceptance of the TV/Voice TOS is required before installation proceeds." *Id.* ¶ 10.

Saigh has further stated that because customer acceptance of the TV/Voice TOS is required before installation of the TV and VOIP components, *e.g., id.* (if customer refuses to accept TV/ Voice TOS, tech-

---

**9.** Hancock has argued in his response that he was solicited to purchase U-verse after a sales pitch, during which "the customer is promised from the start that there is no contract." Doc. 69 at 8. One exhibit on which he has relied, Doc. 69–8, assuming it applies to Hancock since it refers to another individual, only demonstrates that there is no contractual period or term.

SWB and AT & T Ops have not disputed Hancock's contention that the order forms and order worksheets do not constitute the parties' contract. *See* Doc. 69–2 at 1 ("This form is an order request not a contract"). Such forms and worksheets constitute offers to purchase services and are "record[s] of services selected," *id.,* because, as the defendants have argued, the purchase of services is subject to applicable "terms and conditions of AT & T", *id.,* that "AT & T Sales Agents are not . . . authorized to vary. . . ." *Id.*

nician cannot install U-verse services), Hancock "would have necessarily agreed to the TV/Voice TOS...." *Id.* at 4, ¶ 13.

David C. Chicoine is a senior specialist network support in the business unit of AT & T Ops, and his job responsibilities include support of the GCAS used by premises technicians in connection with U-verse installation. Chicoine has stated

(1) that "[b]efore a [p]remises [t]echnician installs U-verse service in the customer's home, the Acceptance Form is displayed electronically on the GCAS web application for the customer to read[,]" Declaration of David C. Chicoine (October 19, 2010)[10] at 2, ¶ 4 ("Chicoine Declaration");

(2) that "[a]fter the customer has an opportunity to read the Acceptance Form,[11] the customer must accept the TV/Voice TOS by clicking on the 'I acknowledge' button displayed on the GCAS web application[,]" *id.* at 3, ¶ 5;

(3) that "[a]fter the customer indicates his acceptance of the TV/Voice TOS in this manner,[12] the Acceptance Form is populated with the customer's name, order number, account number, and date of acceptance[,]" *id.* ¶ 7; and

(4) that "[t]he customer's Acceptance Form is then stored on a server and asso-ciated with the customer's account." *Id.* ¶ 8.

SWB and AT & T Ops have submitted the Acceptance Form for Terms of Service for Purchase and Use of AT & T U-verse Voice and/or AT & T U-verse TV that was generated when Hancock purchased and subscribed to U-verse Voice and TV and when the installation of those services was completed on May 15, 2010. *See* Doc. 58–1 at 14.

In response, counsel for Hancock has concluded that "any 'clicking' or 'accepting' was done quickly by the installer without giving an explanation to ... [Hancock] or an opportunity for ... [Hancock] to read hundreds of pages of contracts 'on the installer's time." Doc. 69–6 at 9. Counsel has further responded that because the premises technician performed the installation and because Saigh has admitted that "the customer acknowledge[s] and agree[s] to the TV/Voice TOS on the technician's laptop ...," Saigh Declaration at 3, ¶ 8, there is no evidence that Hancock accepted the TV/Voice TOS and/or the forum selection clause set forth therein. *See also* Doc. 1 at 22, ¶ 77 (plaintiffs "never provided copy [of Terms of Service]").

In support of these allegations, Hancock has submitted an affidavit wherein he has stated that he "did not 'click on' ANY

---

10. The declaration submitted by Chicoine as well as the declaration submitted by Saigh is "based upon ... [the declarant's] personal knowledge, review of corporate and business records, and interviews with appropriately knowledgeable persons." Chicoine Declaration at 2, ¶ 2; *e.g.*, Saigh Declaration at 2, ¶ 2.

11. The Acceptance Form cautions customers "[b]efore ... acknowledging," Doc. 58–1 at 14, to "read the applicable terms of service provided by ... [the] AT & T installation technician ...." *Id.*

12. The Acceptance Form reads in pertinent part that the customer acknowledges by his actions that the TV/Voice TOS "have been provided by ... [the] AT & T installation technician," Doc. 58–1 at 14, that he "confirm[s] that the TOS constitute a valid and binding obligation," *id.*, and that he has "read, understand[s], and agree[s] to all applicable terms of service, including this Acceptance Form[and] the AT & T U–Verse voice [a]nd TV General Terms of Service ...." *id.*

acceptance of U-verse Terms of Service' when ... [he] bought U-verse, and the salesman never told ... [him] about any Terms of Service.' " Affidavit of Gayen Hancock (December 9, 2010) at 2, ¶ 2 (emphasis in original). He has further stated that he "was never aware of the fact that there were actually multiple terms of service for TV, VOIP and Internet services." *Id.* ¶ 3.

In considering a motion under Rule 12(b)(3), *supra*, the Court may consider matters outside the pleadings, and any factual allegations in the complaint are taken as true but "only to the extent that such facts are uncontroverted by defendant's affidavit[s]." *Pierce v. Shorty Small's of Branson, Inc.*, 137 F.3d 1190, 1192 (10th Cir.1998). Hancock has further asserted, citing *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir.2009), that "the Court may rule on the basis of the pleadings and exhibits ... similar to summary judgment." *See* Doc. 69 at 15.

The Court finds Hancock's conclusory and self-serving affidavit is insufficient to support Hancock's allegations that the forum selection clause does not govern his

TV/Voice-related claims since Hancock has not specifically denied that "[a]cceptance of the TV/Voice TOS is required before installation proceeds," Saigh Declaration at 3, ¶ 10, that the "the Acceptance Form [was] ... displayed electronically on the GCAS web application," Chicoine Declaration at 2, ¶ 4, on the premises technician's laptop or that the customer must accept the TV/Voice TOS by clicking on the 'I acknowledge' button displayed on the GCAS web application," *id.* at 3, ¶ 5, before installation may be accomplished. Hancock has likewise not denied or disputed that even if the "salesman" did not explain the provisions of the TV/Voice TOS, that he (Hancock) did not assent to the TV/Voice TOS by electronically indicating his acceptance or acknowledgment of the same on the premise technician's laptop. Hancock has further not disputed his subsequent conduct in accepting TV/Voice services sufficiently manifests his assent to the TV/Voice TOS. E.g., 15 O.S. § 75.

In an attempt to circumvent the enforcement of the mandatory forum selection clause [13] in this case, Hancock has argued that enforcement would be unfair since the TV/Voice TOS

---

**13.** In challenging the existence and formation of the contract containing the forum selection clause, Hancock has argued that "[i]t is important to note that the defendants retain the unilateral right to rewrite and modify the Terms of Service on a moment's notice, and can make any modifications retroactive, even while litigation is pending." Doc. 69 at 28. Hancock has not argued that SWB has changed the terms of the forum selection clause; rather, he has contended that its ability to unilaterally do so renders the clauses illusory.

In this connection, the TV/Voice TOS advises the customer that the

> TOS may be updated or changed from time to time. You can review the most current version ... at any time at: uverse.att.com. If AT & T makes a change to these TOS and

that change has a material impact on the Services, you will be provided notice of that change. Your continued use of the Services following such notice constitutes your acceptance of those changes.

Doc. 58–5 at 37, ¶ 1. The TV/Voice TOS further provides that

> [u]nless otherwise specified in these TOS, notices to you may be made via email, regular mail, posting online at uverse.att.com, recorded announcement, bill message, bill insert, newspaper ad, postcard, letter, or call to your billed telephone number. . . . It is your responsibility to check for such notices.

*Id.* at 44, ¶ 15.

The TV/Voice TOS specifies that SWB must give notice of any change that would materially impact the parties' agreement. It advises each customer that the TOS is "a legal docu-

implicates every concept of fraud, deceit, unfairness, overreaching, [and denial of] access to justice cited as a basis for rejection by [the United States Supreme Court]. . . .

Doc. 69 at 27.

■ Case law establishes that "clickwrap" contracts [14] are enforceable under applicable state law and federal law, *e.g.*, *Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F.Supp.2d 756 (N.D.Tex.2006),[15] and Hancock has cited to no authority that would support the proposition that merely because a forum-selec-tion clause is found within a "clickwrap agreement" that the clause is invalid. *See Via ·Viente Taiwan, L.P. v. United Parcel Service, Inc.*, 2009 WL 398729 (E.D.Tex. 2009).

■ Forum selection clauses do not contravene any federal or state public policy, and "[a] party resisting enforcement [of such a clause] carries a heavy burden of showing that the provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances." *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969

---

ment that details [the customer's] . . . rights and obligations . . ., *id.* at 37, ¶ 1, that "[b]y enrolling in, activating, using, or paying for Services, [the customer] . . . agree[s] to the terms and conditions in these TOS," *id.*, and "[i]f [the customer] do[es] not agree to the . . . terms and conditions, [the customer should] not use the Services, and cancel the Services immediately. . . ." *Id.* Because the TV/Voice TOS requires notice to the customer of any material changes and because the customer can cancel if he does not agree to the same, the Court finds under the circumstances of this case that the TV/Voice TOS, including its forum selection clause, is not illusory.

14. "Clickwrap agreements require a user affirmatively to manifest assent to conditions proposed by the software provider in order to continue with the installation of the software." *Via Viente Taiwan, L.P. v. United Parcel Service, Inc.*, 2009 WL 398729 *2 n. 1 (E.D.Tex.2009) (citation omitted). "Essentially, under a clickwrap arrangement, potential [customers] . . . are presented with the proposed . . . terms and forced to expressly and unambiguously manifest either assent or rejection prior to being given access to the product." *Register.com. Inc. v. Verio, Inc.*, 356 F.3d 393, 429 (2nd Cir.2004).

15. Hancock has attempted to distinguish those cases on which the instant defendants have relied by arguing inter alia that the premises technician, and not the customer, clicked the "I accept" button which was displayed on the technician's computer. Hancock, however, as stated, has failed to present

any evidence that conflicts with SWB's recitation of the standard installation procedure and in particular, that supports any contention that the premises technician failed to failed to seek his acknowledgment on the technician's laptop with the GCAS web application.

Hancock has further relied upon the decision in *Specht v. Netscape Communications Corp.*, 306 F.3d 17 (2d Cir.2002), to demonstrate the invalidity of the forum selection clauses. In *Specht*, however, the Internet customer was urged to click on a button to download free software, without being advised that by doing so, the customer agreed to the terms and conditions of a proposed contract that contained an arbitration clause. The Second Circuit concluded that the customers were not given sufficient or reasonably conspicuous notice of those terms and that the plaintiffs therefore could not have manifested their assent to such terms.

The Second Circuit, however, in addressing a second agreement, which was a "clickwrap agreement," found that the customers when proceeding to initiate the installation of a program, "were automatically shown a scrollable text of that program's license agreement and were not permitted to complete the installation until they had clicked on a 'Yes' button to indicate that they had accept the license terms." *Id.* at 21–22. If the customer "attempted to install [the program] without clicking 'Yes,' the installation would be aborted." *Id.*

F.2d 953, 957 (10th Cir.1992) (citations omitted).

In this regard, Hancock has complained that "[t]he Terms of Service are boilerplate, adhesion instruments," Doc. 1 at 22, ¶ 77, and that "[t]he fine print in the Terms of Service [16] is unconscionable and grossly inadequate to protect ... [him since he] ... had no meaningful choice in determining the limitations...." *Id.*

Neither allegations in the complaint however nor counsel's conclusory statements regarding overreaching [17] are sufficient at this stage in light of the showing made by SWB and AT & T Ops. Moreover, Hancock has advanced no compelling reason why he would be would be seriously inconvenienced, because of financial limitations or other concerns, or why he would be deprived of his day in court if he is required to try his TV/Voice-related claims in a "court[ ] located within the county of Bexar County, Texas." [18]

The Court finds that the testimony of the various declarants and the exhibits submitted by the defendants establish the existence of a mandatory forum selection clause, and in the absence of any showing by Hancock, by affidavit or otherwise, that enforcement this clause would be unfair or unreasonable, SWB and AT & T Ops are entitled to dismissal of Hancock's TV/Voice-related claims against them.

Accordingly, the Court

(1) GRANTS Motion to Dismiss or Transfer [Doc. 53] filed by SWB and AT & T Ops on October 20, 2010, to the extent that the Court hereby ENFORCES the mandatory forum selection clause in the TV/Voice TOS against Hancock and in the exercise of its discretion, DISMISSES without prejudice under Rule 12(b)(3), *supra*, Hancock's TV/Voice-related claims against SWB; and

(2) because the claims asserted by Hancock against AT & T Ops derive from, and are closely intertwined with his contractual relationship with SWB, further FINDS that AT & T Ops may also enforce the TV/Voice TOS and, in its discretion, DISMISSES without prejudice pursuant to Rule 12(b)(3), *supra*, Hancock's TV/Voice-related claims against AT & T Ops.

---

**16.** *Cf. Barnett v. Network Solutions, Inc.*, 38 S.W.3d 200 (Tex.App.2001) (parties to written contract have obligation to read what they sign; absent actual or constructive fraud, they are not excused from consequences attendant upon failure to read contract; same rule applies to contracts which appear in electronic form).

**17.** The United States Supreme Court in *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), explained in connection with a resisting party's allegations of fraud that a "forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion." *Id.* at 519 n. 14, 94 S.Ct. 2449. There has been no showing in this case that the forum selection clause itself was obtained by fraud or coercion.

**18.** *E.g., The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 18, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (incumbent on party seeking to escape application of forum selection clause to show that trial in contractual forum "will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court").