

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-15-00056-CV

Gary **HODGE** and Robert Hart III,
Appellants

v.

Stephen **KRAFT**, Individually and as Member on Behalf of Grupo Habanero LLC,
Appellee

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-CI-18038
Honorable Peter A. Sakai, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:   November 4, 2015

DISMISSED FOR LACK OF JURISDICTION

Gary Hodge and Robert Hart III appeal from the trial court's interlocutory order denying their Motion to Compel Appraisal and Abate Lawsuit. Because we have no jurisdiction over this interlocutory appeal, we dismiss it for lack of jurisdiction.

### BACKGROUND

In 2012, Appellee Stephen Kraft agreed to form a new company, called Grupo Habanero, LLC ("Grupo"), with Appellants Hodge and Hart. As part of the agreement, Kraft sold his restaurant, Habaneros, to Grupo. As part of the sale, Kraft remained an owner of Habaneros by

receiving 100 membership shares of Grupo, which represented a 10% ownership interest. Hart and Hodge each owned 400 units respectively, and another member, Cliff Graham, owned the final 100 units of Grupo.

Kraft also entered into an employment agreement with Grupo. Pursuant to the employment agreement, Grupo had the right to terminate Kraft's employment "at any time for any reason whatsoever or for no reason at all, in [its] sole discretion." Under the employment agreement, if Kraft's employment was terminated for any reason "after the first anniversary of the Effective Date," Grupo could, "at its option, repurchase the Membership Interest." However, Grupo had to "exercise such option in writing and close such repurchase within thirty (30) days of the termination of employment." The employment contract further provided that the "aggregate purchase price for the Membership Interest upon exercise of the option . . . [was] the 'Fair Market Value' of the Membership Interest." "The 'Fair Market Value' of the Membership Interest [was] the price agreed to by the parties; if the parties [could not] within thirty (30) days of the exercise of the option agree upon a Fair Market Value, the Fair Market Value [was to] be determined by a single appraiser chosen by the parties." "If the parties [could not] agree upon an appraiser, the parties [had to] apply to the American Arbitration Association (the "AAA") to appoint a single appraiser." "The appraiser [was to] provide a written appraisal and [] determine the Fair Market Value of the Membership Interest without deduction for its minority position and restrictions on transfer." "The determination of the appraiser [was to] be final and binding upon the parties and the closing of the sale [was to] be completed within thirty (30) days of receiving the appraiser's determination."

Further, under the employment agreement,

notices and all other communications provided for herein [were to] be in writing and [were to] be deemed to have been duly given (a) when received if delivered personally or by courier, (b) on the date receipt [was] acknowledged if delivered by

certified mail, postage prepaid, return receipt requested, or (c) one day after transmission if sent by facsimile transmission with confirmation of transmission, as follows:

If to Employee [Kraft], addressed to: 1114 Birch Hill, San Antonio, TX 78232

If to Company [Grupo], addressed to: 108 N. Mesquite Street, Corpus Christi, TX 78401

or to such other address as either party may furnish to the other in writing in accordance herewith, except that notices or changes of address shall be effective only upon receipt.

On November 17, 2014, Kraft, individually and as a member on behalf of Grupo, sued Hodge and Hart for breach of contract, tortious interference with contract, and breach of fiduciary duty. He alleged that Hodge and Hart "caused Grupo to terminate [Kraft]'s employment on June 6, 2014." Kraft also alleged that the employment contract's option to repurchase his shares was not exercised within thirty days of his termination. According to Kraft's petition, after the option period, Hodge and Hart delivered a letter to him offering to buy his membership interest for $10.00. Kraft alleged that when he contacted them "to reject such an obviously frivolous repurchase offer," Hodge and Hart "threatened [Kraft] that they would take actions to render his ownership interest in Grupo worthless if he did not sell, even though he was under no obligation to divest his share."

In response to the lawsuit, Hodge and Hart filed a Motion to Compel Appraisal and Abate Lawsuit. They contended that Kraft resigned from his position on or about June 6, 2014, and that Grupo exercised its option to repurchase Kraft's 100 units of membership interest on July 3, 2014, when Hodge wrote a letter on behalf of Grupo offering to pay Kraft $10 for his membership interest. Hodge and Hart claimed that Kraft failed to comply with the Employment Agreement because Kraft failed "to agree to appoint an appraiser to determine the fair market value of his membership interest or, if no agreement could be reached, allowing the AAA to appoint an arbitrator." Instead, according to Hodge and Hart, Kraft "completely ignored his contractual

obligations and filed the instant lawsuit." Hodge and Hart requested that the trial court grant their motion and abate the lawsuit until the appraisal occurs." In support of their motion, Hodge and Hart attached a copy of the Company Agreement; the Employment Agreement; a letter on Grupo's letterhead from Hodge to Kraft dated July 3, 2014; and affidavits from Hodge, Kenneth Rourke, and Haley Bennet.

According to these affidavits, on July 3, 2014, Hodge prepared a letter on behalf of Grupo, which stated that pursuant to the provisions of the employment agreement Grupo was exercising its option to repurchase Kraft's 100 units of membership interest in Grupo. The letter proposed a fair market value of $10 for the 100 units and asked Kraft to sign the letter memorializing the agreement. The letter further stated that if Grupo failed to receive the signed letter from Kraft within thirty days, it would assume that he disagreed with the fair market value of the units and that he intended to invoke the mechanisms under the employment agreement for determining the fair market value of the units.

In his affidavit, Gary Hodge affirmed that on July 3, 2014, he "personally hand-delivered a letter to [Kraft]'s address as listed in the Employment Agreement – 1114 Birch Hill, San Antonio, Texas 78232 – exercising Grupo Habanero, LLC's option to repurchase [Kraft]'s 100 units of membership interest." The affidavit stated that Hodge "hand delivered" the letter by knocking "on the front door at the 1114 Birch Hill address two or three times." When "[n]o one answered the door," Hodge "then scotched taped the letter to the door." In his affidavit, Kenneth Rourke, Chief Operating Officer of Grupo, affirmed that on July 3, 2014, he accompanied Hodge to 1114 Birch Hill and watched as Hodge knocked on the front door two or three times. When no one answered the door, he watched Hodge scotch tape the letter to the door.

Haley Bennet, the former Director of Finance and Accounting for Grupo, affirmed in her affidavit that either she or Hodge "delivered the option exercise letter by email to [Kraft] on July

3, 2014." Bennet affirmed that she or Hodge "used an email address for [Kraft] that [they] had used before and . . . knew to be accurate." Bennet affirmed that she and Hodge "knew this email was delivered to [Kraft]'s email address . . . because it did not bounce back."

In response to Hodge and Hart's motion to compel appraisal, Kraft argued that Hodge and Hart failed to timely exercise the purchase option in the employment agreement. According to Kraft, when they realized they had not timely exercised their option, they "began to make threats against [Kraft]'s interest." They "engaged in oppressive conduct to freeze out [Kraft], including denying him access to the financial records of the company to which he is entitled by law." As evidence in support of his response, Kraft attached the Company Agreement; the Employment Agreement; the July 3, 2014 letter; and his own affidavit.

In his affidavit, Kraft affirmed that he lived at 1115 Birch Hill, not 1114 Birch Hill, and that the Employment Agreement contained "a scrivener's error." He stated that he "notified Defendants of this error prior to [his] termination." He affirmed that the letter written by Hodge on behalf of Grupo "was not personally delivered to [him]" and that he "did not become aware of the letter within 30 days of [his] termination." He also affirmed that he "did not receive the letter by facsimile transmission"; nor did he "receive the letter by U.S. certified mail, return receipt requested within 30 days of [his termination]."

At the hearing on the motion, no testimony was given. The trial court denied Hodge and Hart's motion to compel appraisal and abate lawsuit. Hodge and Hart then filed a notice of interlocutory appeal.

## DISCUSSION

Hodge and Hart argue the trial court abused its discretion in denying their motion to compel appraisal, arguing that the "Texas Supreme Court has enunciated a strong policy in favor of enforcing appraisal clauses in contracts." Kraft responds that this court lacks jurisdiction to hear this interlocutory appeal of an order denying a motion to compel appraisal. Unless a statute authorizes an interlocutory appeal, we generally have jurisdiction only over final judgments. *CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011). And, we strictly apply statutes granting interlocutory appeals because they are a narrow exception to the general rule that interlocutory orders are not immediately appealable. *Id.* In their notice of appeal and in their reply brief, Hodge and Hart contend that we have jurisdiction pursuant to section 171.098 of the Texas Civil Practice and Remedies Code.

Section 171.098 provides, in relevant part, that a party may appeal an order "denying an application to compel arbitration made under Section 171.021." TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(1) (West 2011). Section 171.021 states that a "court shall order the parties to arbitrate on application of a party showing: (1) an agreement to arbitrate; and (2) the opposing party's refusal to arbitrate." *Id.* § 171.021(a). Here, Hodge and Hart did not file a motion to compel arbitration; they filed a motion to compel appraisal and abate the lawsuit. In their reply brief, they recognize that their motion was not, in fact, a motion to compel arbitration, but claim that the "appraisal provision in the employment contract is *in essence* an arbitration provision." (emphasis added).

In support of their argument, Hodge and Hart cite *Vanguard Underwriters Insurance Co. v. Smith*, 999 S.W.2d 448, 451 (Tex. App.—Amarillo 1999, no pet.), claiming that it stands for the proposition that an appraisal contract provision, whether invoking an appraiser appointed by the American Arbitration Association or not, "is in essence one requiring arbitration." *Vanguard*

*Underwriters* was not brought in the context of an interlocutory appeal, but was a mandamus proceeding where the relator, an insurance company, sought relief from the trial court's denial of its motion to compel its insureds to submit to an appraisal and to abate the underlying lawsuit until the appraisal was completed. *Id.* at 449. The insureds claimed the insurance contract was unconscionable and void for fraud or duress. *Id.* at 451. In determining whether a writ of mandamus should be granted, the court considered "the narrow question" of "whether the provision of the contract requiring the [insureds] to submit to the specified appraisal procedural [was] enforceable." *Id.* The court explained that "[b]ecause the provision with which we are concerned is, in its essence, one requiring arbitration, cases considering such clauses are *instructive* to us" in deciding whether the appraisal provision in the contract was enforceable. *Id.* (emphasis added). It then noted that a "party seeking arbitration must establish the existence of an arbitration agreement and show that the claims raised fall within the scope of the agreement." *Id.* And, once a party established a claim within the arbitration agreement, a "trial court must compel arbitration and stay its own proceedings." *Id.* The court then looked at the insurance contract and concluded that under its provisions, the insurance company was "clearly entitled to have the appraisal procedure followed and the underlying suit abated until the completion of that procedure." *Id.* The court then conditionally granted the writ of mandamus. *Id.* Thus, while *Vanguard* looked to arbitration cases for guidance, *Vanguard* does not stand for the proposition that an appraisal provision in a contract is an arbitration provision that is subject to an interlocutory appeal pursuant to section 171.098.

Hodge and Hart also claim that "[a]ppointment of an arbitrator to resolve a dispute over value is clearly authorized by the Texas Arbitration Act and the appraisal requirement of a contract [is] now generally considered to be a form of arbitration." They cite *Lass v. State Farm Mutual Insurance Co.*, No. 14-98-00488-CV, 2000 WL 1125287, at *5 (Tex. App.—Houston [14th Dist.]

2000, pet. denied), in support of this assertion. As in *Vanguard*, *Lass* did not concern an interlocutory appeal. *See Lass*, 2000 WL 1125287, at *1. *Lass* involved an appeal from a final judgment. *Id.* Thus, *Lass* also does not stand for the proposition that an appraisal provision in a contract is an arbitration provision that is subject to an interlocutory appeal pursuant to section 171.098.

Hodge and Hart cite *Lass* for the proposition that an appraisal provision in a contract is "now generally considered to be a form of arbitration." *Lass* concerned an automobile accident, which resulted in the plaintiffs suing their insurance company for underinsured benefits and for violations of the Texas Insurance Code. *Lass*, 2000 WL 1125287, at *1. The insurance policy in that case provided that if the insurance company and the insured could "not agree on the amount of loss, either [could] demand an appraisal of the loss." *Id.* at *3. "In this event, each party will select a competent appraiser." *Id.* "The two appraisers will state separately the actual cash value and the amount of loss." *Id.* "If they fail to agree, they will submit their differences to the umpire." *Id.* "A decision agreed to by any two will be binding." *Id.* The policy did not address the steps to be taken if neither appraiser could agree to an umpire. *Id.* Because the policy was silent on this issue, the trial court appointed an umpire itself. The insureds appealed, arguing the trial court had no authority to do so and "essentially wrote a new term into the insurance policy." *Id.* On appeal, the Fourteenth Court of Appeals noted that whether the appraisal provision of the contract authorized the trial court to appoint an umpire when the appraisers could not agree to an umpire was a question of interpretation of the contract. *Id.* The court of appeals, citing *Vanguard*, then reasoned that "[b]ecause the provision with which we are concerned is, in its essence, one requiring arbitration, cases considering such clauses are *instructive* to us in making our decision." *Lass*, 2000 WL 1125287, at *3 (emphasis added). Thus, the Fourteenth Court of Appeals, like the *Vanguard* court, looked to arbitration cases for guidance. The Fourteenth Court of Appeals then ended its

discussion with the following broad language: "the appraisal requirements *of an insurance policy* are now generally considered to be a form of arbitration." *Id.* at *5. (emphasis added).

The Texas Supreme Court has explained that appraisal clauses "are uniformly included in most forms of property insurance policies" and now appear "in almost every homeowners, automobile, and property policy in Texas." *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888 (Tex. 2009). While such provisions are now commonplace in insurance policies, the supreme court has emphasized that the scope of appraisal is different from the scope of arbitration. In *Johnson*, it quoted a supreme court case from 1888 stating the following:

> But here the [appraisal clause] does not divest the courts of jurisdiction, but only binds the parties to have the extent or amount of the loss determined in a particular way, leaving the question of liability for such loss to be determined, if necessary, by the courts.

*Johnson*, 290 S.W.3d at 889 (quoting *Scottish Union & Nat'l Ins. Co. v. Clancy*, 71 Tex. 5, 8 S.W. 630, 631 (1888)) (alteration in original). The supreme court then noted that it had "repeated this distinction between *damage* questions for appraisers and *liability* questions for the courts." *Id.* (emphasis added). The supreme court explained that most appraisal clauses in insurance policies direct the appraiser to decide the "amount of loss," but "not to construe the policy or decide whether the insurer should pay." *Id.* at 890. The supreme court concluded that "the scope of appraisal is damages, not liability." *Id.* Thus, appraisal provisions are different from arbitration clauses and cannot be construed to be one and the same.

We agree with Hodge and Hart that the Texas Supreme Court has held that "appraisal is intended to take place before suit is filed" and is "a condition precedent to suit." *Id.* at 894. In *Johnson*, the supreme court noted that "appraisals require no attorneys, no lawsuits, no pleadings, no subpoenas, and no hearings." *Id.* "It would be a rare case in which appraisal could not be

completed with less time and expense than it would take to file the motions contesting it."[1] "Allowing litigation about the scope of appraisal before the appraisal takes place would mark a dramatic change *in Texas insurance practice*, and surely would encourage much more of the same." *Id.* (emphasis added). Thus, the supreme court has discussed in the insurance policy context that appraisals "should generally go forward without preemptive intervention by the courts." *Id.* at 895.

However, we can find no case in which the supreme court has held that an order denying a motion to compel an appraisal could be the subject of a permissible interlocutory appeal pursuant to section 171.098. Indeed, the supreme court's decision in *Johnson* was an appeal from a final judgment. *See Johnson*, at 888 n.2; *see also Sec. Nat'l Ins. Co. v. Waloon Inv., Inc.*, 384 S.W.3d 901, 904 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (appeal from a final order, made final after a severance, which compelled a hotel owner to appeal in an appraisal under the terms of the insurance policy). Another supreme court case involving the issue of whether an insurer was entitled to enforcement of an appraisal clause arose in the context of a mandamus proceeding.[2] *See In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 412 (Tex. 2011) (orig. proceeding) ("We have held that mandamus relief is appropriate to enforce an appraisal clause because denying the appraisal could vitiate the insurer's right to defend its breach of contract claim."); *see also In re Cypress Tex. Lloyds*, 419 S.W.3d 443, 445 (Tex. App.—Beaumont 2012, orig. proceeding) (conditionally granting petition for writ of mandamus for insurer in motion to compel appraisal context).

---

[1] The underlying case, which involves the valuation of a business and not the simple valuation of property damage found in most insurance disputes, might be one of these rare cases.

[2] We note that in certain circumstances, we may treat an interlocutory appeal as a petition for writ of mandamus. *See CMH Homes*, 340 S.W.3d at 452-53. However, to do so, the party seeking appellate review must specifically request that its appeal be treated as a mandamus petition. *See id.* at 452. Here, Hodge and Hart have not requested us to consider their appeal, alternatively, as a petition for writ of mandamus. Accordingly, we will not construe their appeal as such.

Finally, we note that while the appraisal provision at issue in this case makes reference to the American Arbitration Association ("AAA"), it only does so for the purpose of the AAA appointing a single appraiser. Such language cannot be construed as the parties agreeing to submit their dispute to arbitration and thus cannot be considered an arbitration provision.[3]

## CONCLUSION

Having found no case law to support Hodge and Hart's position that we have jurisdiction over the trial court's interlocutory order, we conclude that we lack jurisdiction over this appeal. We therefore dismiss this appeal for lack of jurisdiction.

Karen Angelini, Justice

---

[3]We note that section 171.098 is not the only interlocutory appeal statute regarding arbitration. Section 51.016 of the Texas Civil Practice and Remedies Act provides that "[i]n a matter subject to the Federal Arbitration Act," a party may appeal from an interlocutory order "under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. § 16." TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West 2015). Hodge and Hart do not argue that the appraisal provision is one governed by the Federal Arbitration Act. However, because the issue before us is one of jurisdiction, which we have a duty to look at *sua sponte*, we note that for the same reasons expressed in this opinion, the appraisal provision is not an arbitration provision under the Federal Arbitration Act. Thus, section 51.016 cannot invoke the appellate jurisdiction of this court.