ACCEPTED
04-15-00056-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
12/14/2015 7:57:31 PM
KEITH HOTTLE
CLERK

## No. 04-15-00056-CV

# In the Fourth Court of Appeals
# San Antonio, Texas

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
12/14/2015 7:57:31 PM
KEITH E. HOTTLE
Clerk

### GARY HODGE AND ROBERT HART III

*Appellants*

**v.**

### STEPHEN KRAFT INDIVIDUALLY AND AS MEMBER ON BEHALF OF GRUPO HABANERO LLC,

*Appellee*

APPEAL FROM CAUSE NO. D-1-GN-09-001428
225TH JUDICIAL DISTRICT COURT OF BEXAR COUNTY, TEXAS
HON. PETER SAKAI PRESIDING

### APPELLANTS' MOTION FOR REHEARING

TO THE HONORABLE FOURTH COURT OF APPEALS:

Appellants, Gary Hodge and Robert Hart III, file this motion for rehearing asking the Panel to reconsider its dismissal of their appeal. *See* TEX. R. APP. P. 49.1. Appellants respectfully show:

### GROUNDS FOR REHEARING

The Panel dismissed Appellant's appeal for lack of jurisdiction, holding that Appellants' appeal from the trial court's order denying their

1

motion to compel an appraisal was not an order "denying an application to compel arbitration made under Section 171.021." *Hodge v. Kraft*, No. 04-15-00056-CV, 2015 WL 6735291, at *3 (Tex. App.—San Antonio Nov. 4, 2015, no pet. h.) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(1)) (*See attached*). In a footnote, the Panel noted that it could have treated the interlocutory appeal as a mandamus proceeding, had Appellants asked. *Id.* at *5 n.2. Since Appellants had not done so, the Panel dismissed. *Id.*

Appellants raise the following grounds for rehearing:

1.     The Panel implicitly held that Appellants waived the right to have the interlocutory appeal treated as a mandamus proceeding. But should the Panel have followed the numerous decisions where appellate courts have *sua sponte* treated an interlocutory appeal as a mandamus? Given that (1) courts are loathe to find waiver and instead prefer to dispose of cases on the merits, (2) this procedural defect could have easily been cured (and still could be), and (3) substantial resources would be wasted if a separate mandamus petition were now required, should the Panel follow that precedent upon request now?

2.     Should the Panel reconsider its dismissal of this appeal and afford Appellants a reasonable opportunity to "correct or amend the defects

2

or irregularities" in the procedural presentation of this case, as required by Rule 44.3?

## ARGUMENT

The Panel implicitly held that Appellants waived their ability to have the interlocutory appeal treated as a mandamus by failing to request that relief in their prior briefing. *Id.* at *5 n.2. However, numerous courts— including the Texas Supreme Court—have *sua sponte* treated an improper appeal (or other procedural device) as a mandamus proceeding. And, Texas Rule of Appellate Procedure 44.3 requires an appellate court to afford an opportunity to cure procedural defects, such as this, prior to dismissal.

Treatment of an improper appeal as a mandamus upon rehearing is particularly appropriate where, as here, the procedural defect could easily have been fixed—and still could be. Rehearing would avoid a waste of the parties' and judicial resources. Under Rule 44.3, this Court should grant Appellants a reasonable opportunity to cure this procedural defect by granting this motion, ordering any necessary re-briefing, and considering this appeal as a mandamus proceeding.

A. **The Panel relied upon *CHM Homes v. Perez* to find waiver, but that case is distinguishable.**

The Panel relied on *CMH Homes v. Perez,* holding that because Appellants did not ask for their interlocutory appeal to be treated as a

3

mandamus, the Panel would not do so. *Id.* at *5 n.2 (citing 340 S.W.3d 444, 453-54 (Tex. 2011)). Because of the distinguishing factors in that case, however, the Texas Supreme Court was not asked to review the numerous cases where courts have *sua sponte* treated an interlocutory appeal (or other procedural device) as a mandamus.

In *CMH Homes v. Perez*, the Texas Supreme Court noted the similarities between interlocutory appeals and mandamus proceedings, and held there is no procedural reason not to treat an interlocutory appeal as a mandamus. 340 S.W.3d at 453-54. For example, an interlocutory appeal must be perfected quickly. *Id.* Because mandamus is "'controlled largely by equitable principles,' there is no fixed deadline for filing original proceedings in the Texas Rules of Appellate Procedure.'" *Id.* (quoting *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 676 (Tex. 2009)). Thus, a timely interlocutory appeal would "generally be timely for mandamus purposes." *Id.* Additionally, there is really no meaningful distinction between the briefing requirements in mandamus actions and interlocutory appeals. *Id.* Indeed, most parallel proceedings involving an interlocutory appeal and mandamus from the same order are consolidated for decision. *Id.*

Accordingly, there is no procedural obstacle to treating an interlocutory appeal as a mandamus proceeding. *Id.* In fact, the Texas

4

Supreme Court held that it was inefficient to let such a "technicality rule the day." *Id.* When an interlocutory appeal can be treated as a mandamus, and a mandamus would be proper, the Court held that it would "not unnecessarily waste the parties' time and further judicial resources" by requiring an appellant "to file a separate document with the title 'petition for writ of mandamus' listed on the cover *where the party has expressly requested mandamus treatment of its appeal in an uncertain legal environment*." *Id.* (emphasis added).

The Panel relied on this last phrase and other similar language in *CMH Homes v. Perez* to hold that Appellants waived the right to have this Court treat their interlocutory appeal as a mandamus by failing to request such treatment in the briefs. *Hodge*, 2015 WL 6735291, at *5 n.2 (citing *CHM*, 340 S.W.3d at 452). The facts of *CMH* are distinguishable. Because the appellant in that case had requested mandamus relief, the Supreme Court had no occasion to address the cases where courts had *sua sponte* treated an interlocutory appeal as a mandamus or Rule 44.3 (formerly rule 83), which allows a party an opportunity to a cure any procedural defect before dismissal. *CHM*, 340 S.W.3d at 452. Nevertheless, at the very least, the *CMH* court's reasoning, and Rule 44.3, supports allowing the request to be made on rehearing now.

**B. Courts have *sua sponte* treated interlocutory appeals (and other procedural devices) as mandamus proceedings, or at the very least, offered an opportunity to cure the defect under Texas Rule of Appellate Procedure 44.3.**

Because the petitioner in *CMH* had requested mandamus treatment in the court of appeals, the Supreme Court had no occasion to address the cases where appellate courts had treated an improperly filed appeal (or other procedural device) as a mandamus proceeding *without* a request by the appellant/petitioner for such treatment—from the opinions, it appears that the consideration occurred *sua sponte*, or at the very least, after notice and an opportunity to cure under Rule 44.3.

In a concurrence involving the same interlocutory appeal statute at issue here, former Justice Brister cited Rule 44.3 to support that, where a party erroneously filed an interlocutory appeal instead of a mandamus from an order denying arbitration under the FAA (as previously required), the court should simply treat the interlocutory appeal as a mandamus. *In re D. Wilson Const. Co.*, 196 S.W.3d 774, 784 (Tex. 2006) (Brister, J., concurring). Rule 44.3 provides: "A court of appeals must not affirm or reverse a judgment or dismiss an appeal for formal defects or irregularities in appellate procedure without allowing a reasonable time to correct or amend the defects or irregularities." TEX. R. APP. P. 44.3.

Justice Brister noted that some courts had simply ignored the defect in procedure and proceeded to the merits, and Rule 44.3 justified the decision:

> When a party chooses the wrong form to enforce arbitration, Texas appellate courts "must not ... dismiss an appeal for formal defects or irregularities in appellate procedure without allowing a reasonable time to correct or amend the defects or irregularities." When this and other Texas appellate courts decide that an appeal or other pleading should have been pursued by mandamus, we do not generally toss out the appeal or require it to be done twice; instead, we treat the improper appeal as a proper mandamus.

*In re D. Wilson Const. Co.*, 196 S.W.3d at 784 (Brister, J., concurring) (citations omitted). This is in line with the substantial case law that supports the courts' preference for rulings on the merits, rather than dismissals for procedural defects—a preference this Court has applied. *Higgins v. Randall Cty. Sheriff's Office*, 257 S.W.3d 684, 688 (Tex. 2008); *Stolte v. Cty. of Guadalupe*, 139 S.W.3d 406, 409 (Tex. App.—San Antonio 2004, no pet.).

In support for his concurrence, Justice Brister cited several cases where courts—including the Texas Supreme Court—had *sua sponte* treated an improper appeal as a mandamus. *In re D. Wilson Const. Co.*, 196 S.W.3d at 784 (Brister, J., concurring) (citations omitted).

For example, in *Edgewood Indep. Sch. Dist. v. Kirby*, the petitioners filed a direct appeal to the Texas Supreme Court. 804 S.W.2d 491, 494 (Tex. 1991). As part of their direct appeal, petitioners asked the Supreme Court to

7

enforce its mandate from a prior decision *Id.* Without indicating anywhere in the opinion that the petitioners requested mandamus relief, the Court treated the petition for a direct appeal as a mandamus petition. *Id.* Specifically, the Texas Supreme Court held that mandamus was the appropriate remedy, and it "need not" determine if its jurisdiction had been properly invoked through the filing of a direct appeal because the "parties are properly before us for other reasons"—the petitioner's request for enforcement of the prior mandate invoked the court's mandamus jurisdiction. *Id.*

Justice Brister further noted several courts of appeal decisions that had likewise *sua sponte* treated improper interlocutory appeals as mandamus proceedings. *Bielamowicz v. Cedar Hill Indep. Sch. Dist.*, 136 S.W.3d 718, 719-20 & n.1 (Tex. App.—Dallas 2004, pet. denied) (noting, at the outset, that pro se plaintiff should have filed a petition for writ of mandamus, but nevertheless *sua sponte* treating appeal as such); *In re Swarthout*, 982 S.W.2d 92, 92 (Tex. App.—Houston [1st Dist.] 1998, orig. proceeding) (treating "Defendant's Pro Se Petition to the First Court of Appeals to be Allowed to Appeal Cause No. 751098" as a petition for writ of mandamus); *see also Coronado v. Jones,* No. 03-13-00464-CV, 2015 WL 2183459, at *1 (Tex. App.—Austin May 6, 2015, orig. proceeding) (mem. op.); *In re Cobos,* 994 S.W.2d 313, 314 (Tex. App.—Corpus Christi 1999, orig.

8

proceeding) (treating petitioner's filing of a writ of prohibition as a writ of mandamus); *State ex rel. Wade v. Stephens*, 724 S.W.2d 141, 143 (Tex. App.—Dallas 1987, orig. proceeding) (same); *Clark v. Russell*, 590 S.W.2d 651, 652 (Tex. Civ. App.—Dallas 1979, orig. proceeding) (treating a "Motion to Compel Transmission of Transcript" as a petition for a writ of mandamus).

As evidenced in the above cases, Rule 44.3 provides the support for the idea that courts should treat interlocutory appeals under Chapter 171 of the Civil Practice and Remedies Code as mandamus proceedings. *In re D. Wilson Const. Co.*, 196 S.W.3d at 784 (Brister, J., concurring). Courts have relied on Rule 44.3 to allow Appellants a reasonable opportunity to cure the procedural defects, prior to dismissal, which affected the court's jurisdiction over the case. *Id.*

For example, in *Linwood v. NCNB Texas,* the Texas Supreme Court addressed a case where, although a cost bond was required (at the time) to perfect an appeal, the appellant instead filed only a notice of appeal. 885 S.W.2d 102, 103 (Tex. 1994). The Court held that "[a]lthough the court of appeals correctly held that Linwood's notice of appeal was the improper instrument to perfect his appeal, . . . before dismissing the appeal, the court of appeals would have had to give Linwood an opportunity to correct his

error by substituting the correct instrument." *Id.*; *see also Grand Prairie Indep. Sch. Dist. v. S. Parts Imports, Inc.,* 813 S.W.2d 499, 500 (Tex. 1991); *Commercial Credit Corp. v. Smith*, 143 Tex. 612, 616 (1945).

Additionally, in *In re Rockafellow*, the Amarillo Court of Appeals addressed a case where the party filed a motion to stay a pre-suit deposition in the court of appeals, without also simultaneously filing a mandamus petition. No. 07-11-00066-CV, 2011 WL 2848638, at *1 (Tex. App.—Amarillo July 19, 2011, orig. proceeding) (mem. op.). The court treated the motion as a mandamus petition and allowed an opportunity to amend to cure the procedural defects arising from the filing of a motion to stay instead. *Id.*

The Panel could have *sua sponte* considered the interlocutory appeal as a mandamus petition. It certainly would have been within its discretion to do so, as many courts have in the past. As explained next, the Panel can do so on rehearing.

## C. The Panel can consider a request for mandamus treatment on rehearing.

While in *CMH*, the petitioner had requested mandamus treatment in the court of appeals' initial briefing, that fact does not preclude this Panel from doing so in this case now. The Austin Court of Appeals recently granted a request on rehearing to treat an appeal as a mandamus proceeding.

*See Caldwell v. Garfutt,* No. 03-12-00696-CV, 2014 WL 1576871, at *1 (Tex. App.—Austin Apr. 17, 2014, no pet./orig. proceeding) (mem. op.).

Appellants certainly made a bona fide attempt to invoke this Court's jurisdiction to review the order challenged in this appeal. The Supreme Court has said, "[a]s long as 'the appellant timely files a document in a bona fide attempt to invoke the appellate court's jurisdiction, the court of appeals, on appellant's motion, must allow the appellant an opportunity to amend or refile the instrument required by law or our Rules to perfect the appeal." *In re J.M.,* 396 S.W.3d 528, 530 (Tex. 2013) (citing *Grand Prairie Indep. Sch. Dist. v. S. Parts Imports, Inc.,* 813 S.W.2d 499, 500 (Tex. 1991) and TEX. R. APP. P. 44.3). Given Appellants' attempt to invoke the Court's jurisdiction and Rule 44.3, the Panel should allow Appellants a reasonable opportunity to cure the procedural defect. TEX. R. APP. P. 44.3; *Caldwell,* 2014 WL 1576871, at *1. Granting this request for rehearing and ordering any

11

additional re-briefing would allow the Panel to comply with the preference for rulings on the merits and Rule 44.3.[1]

**D.     Allowing rehearing to consider this interlocutory appeal as a mandamus would avoid a waste of judicial resources.**

Granting rehearing to allow consideration of this interlocutory appeal as a mandamus would avoid a waste of the parties' and judicial resources. *See B.J.M. v. State*, 997 S.W.2d 626, 627 (Tex. App.—Dallas 1998, no pet.) (treating mandamus as pre-record motion to avoid a waste of judicial resources). There is no deadline to file a mandamus petition, save and except for laches. "To invoke the equitable doctrine of laches, the [appellee/real party in interest] ordinarily must show an unreasonable delay by the opposing party in asserting it rights, and also [appellee/real party in interest]'s good faith and detrimental change in position because of the delay." *In re Laibe Corp.*, 307 S.W.3d 314, 318 (Tex. 2010).

---

[1] Appellants acknowledge that this Court has no ability to reverse or overrule Texas Supreme Court precedent.  Appellants do not believe that *CMH* imposed a requirement that an appellant specifically request in its opening or reply brief for the court to treat an interlocutory appeal as a mandamus in order to preserve the issue. In contrast, Appellants believe that *CMH* is distinguishable because the appellants *did* make such a request, and therefore, the Court did not have to address the situation involved here in this case. To the extent the Court disagrees, Appellants reserve the right to argue to the Texas Supreme Court that *CMH* should be overruled in light of Rule 44.3 and other courts' willingness to *sua sponte* treat an improperly filed interlocutory appeal as a mandamus. Appellants further disagree that an interlocutory appeal was not authorized, and in no way concede that argument.

There is no dispute, and can be no dispute, that Appellants timely filed and prosecuted their interlocutory appeal. Appellee has *never* been under the impression that Appellants did not intend to challenge the trial court's order denying their motion to compel an appraisal. Accordingly, there is nothing to stop Appellants from filing a mandamus petition *now* to challenge the ruling. Appellants intend to do so if the Panel does not grant rehearing. Granting rehearing, rather than requiring Appellants "to file a separate document with the title 'petition for writ of mandamus' listed on the cover," would prevent this unnecessary waste of the parties' and judicial resources. *CMH Homes*, 340 S.W.3d at 453.

This case has been fully briefed and the record has been filed. Under these circumstances, the Austin Court of Appeals has held:

> [R]equiring the filing of a separate mandamus proceeding under the circumstances before us, including that the case has been briefed and both the clerk's and reporter's records have been filed, would unnecessarily waste the parties' time and additional judicial resources. We will, therefore, construe Coronado's briefing as an attempt to invoke our original jurisdiction by way of a petition for writ of mandamus.

*Coronado,* 2015 WL 2183459, at *1. To avoid this waste, the Austin Court of appeals has allowed the request for mandamus treatment to be made on rehearing. *See Caldwell,* 2014 WL 1576871, at *1. Appellants request that

courtesy from this Court, and respectfully ask for a rehearing for that purpose.

## CONCLUSION AND PRAYER

For these reasons, Appellants respectfully request that the Court grant the motion for rehearing, treat this proceeding as an original mandamus proceeding and allow Appellants the opportunity to cure the procedural defect noted by the Panel, and reverse the trial court's judgment.

Respectfully submitted,

SMITH LAW GROUP LLLP

*/s/ Brandy Wingate Voss*
Brandy Wingate Voss
State Bar No. 24037046
820 E. Hackberry Ave.
McAllen, Texas 78501
(956) 683-6330
(956) 225-0406 (fax)
brandy@appealsplus.com

*Counsel for Appellants*

*/s/ Brandy Wingate Voss*
Brandy Wingate Voss

**CERTIFICATE OF COMPLIANCE**

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This contains 2,839 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

<u>/s/ Brandy Wingate Voss</u>
Brandy Wingate Voss

**CERTIFICATE OF SERVICE**

On December 14, 2015, in compliance with Texas Rule of Appellate

Procedure 9.5, I served this document by e-service and e-mail to:

Richard W. Espey
Matthew Soliday
Espey & Associates, PC
13750 San Pedro Avenue, Suite 730
San Antonio, TX 78232
Fax: (210) 404-0336
respey@lawespey.com
msoliday@lawespey.com
Attorneys for Appellees


*/s/ Brandy Wingate Voss*
Brandy Wingate Voss

2015 WL 6735291
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT
LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

Court of Appeals of Texas,
San Antonio.

Gary Hodge and Robert Hart III, Appellants

v.

Stephen Kraft, Individually and as Member on Behalf of Grupo Habanero LLC, Appellee

No. 04–15–00056–CV  |  Delivered and Filed: November 4, 2015

**Synopsis**
**Background:** Employee brought action against former employer for breach of contract, tortious interference with contract, and breach of fiduciary duty. Employer moved to compel appraisal and abate lawsuit. The 224th Judicial District Court, Bexar County, Peter A. Sakai, J., denied motion. Employer appealed.

**[Holding:]** The Court of Appeals, Karen Angelini, J., held that Court of Appeals lacked jurisdiction over appeal.

Appeal dismissed.

West Headnotes (4)

**[1]**    **Alternative Dispute Resolution**  🔑  Decisions reviewable;  finality

Court of Appeals lacked jurisdiction over employer's interlocutory appeal from trial court's order denying its motion to compel appraisal and abate lawsuit, in employee's action for breach of contract, tortious interference with contract, and breach of fiduciary duty; statute provided that parties could appeal an order denying an application to compel arbitration, appraisal provisions were different from arbitration provisions, and appraisal provision's reference to the American Arbitration Association (AAA) was only for the purpose of appointing an appraiser and could not have been construed as an agreement to submit dispute to arbitration. Tex. Civ. Prac. & Rem. Code Ann. §§ 51.016, 171.021, 171.098(a)(1).

Cases that cite this headnote

**[2]**    **Appeal and Error**  🔑  Necessity of final determination

Unless a statute authorizes an interlocutory appeal, the Court of Appeals generally has jurisdiction only over final judgments.

Cases that cite this headnote

**[3]**    **Appeal and Error**  🔑  Interlocutory and Intermediate Decisions

The Court of Appeals strictly applies statutes granting interlocutory appeals because they are a narrow exception to the general rule that interlocutory orders are not immediately appealable. Tex. Civ. Prac. & Rem. Code Ann. §§ 171.021, 171.098(a)(1).

Cases that cite this headnote

**[4]** **Mandamus** Form, requisites, and sufficiency in general

In certain circumstances, the Court of Appeals may treat an interlocutory appeal as a petition for writ of mandamus; however, to do so, the party seeking appellate review must specifically request that its appeal be treated as a mandamus petition.

Cases that cite this headnote

From the 224th Judicial District Court, Bexar County, Texas, Trial Court No. 2014–CI–18038, Honorable Peter A. Sakai, Judge Presiding

**Attorneys and Law Firms**

Allison Moore, Jessica Mann, Roderick J. Regan, Branscomb PC, San Antonio, TX, for Appellants.

Richard William Espey, Matthew Soliday, Espey & Associates, PC, San Antonio, TX, for Appellee.

Sitting: Karen Angelini, Justice, Rebeca C. Martinez, Justice, Patricia O. Alvarez, Justice

## OPINION

Opinion by: Karen Angelini, Justice

**\*1** Gary Hodge and Robert Hart III appeal from the trial court's interlocutory order denying their Motion to Compel Appraisal and Abate Lawsuit. Because we have no jurisdiction over this interlocutory appeal, we dismiss it for lack of jurisdiction.

## BACKGROUND

In 2012, Appellee Stephen Kraft agreed to form a new company, called Grupo Habanero, LLC ("Grupo"), with Appellants Hodge and Hart. As part of the agreement, Kraft sold his restaurant, Habaneros, to Grupo. As part of the sale, Kraft remained an owner of Habaneros by receiving 100 membership shares of Grupo, which represented a 10% ownership interest. Hart and Hodge each owned 400 units respectively, and another member, Cliff Graham, owned the final 100 units of Grupo.

Kraft also entered into an employment agreement with Grupo. Pursuant to the employment agreement, Grupo had the right to terminate Kraft's employment "at any time for any reason whatsoever or for no reason at all, in [its] sole discretion." Under the employment agreement, if Kraft's employment was terminated for any reason "after the first anniversary of the Effective Date," Grupo could, "at its option, repurchase the Membership Interest." However, Grupo had to "exercise such option in writing and close such repurchase within thirty (30) days of the termination of employment." The employment contract further provided that the "aggregate purchase price for the Membership Interest upon exercise of the option ... [was] the 'Fair Market Value' of the Membership Interest." "The 'Fair Market Value' of the Membership Interest [was] the price agreed to by the parties; if the parties [could not] within thirty (30) days of the exercise of the option agree upon a Fair Market Value, the Fair Market

Value [was to] be determined by a single appraiser chosen by the parties." "If the parties [could not] agree upon an appraiser, the parties [had to] apply to the American Arbitration Association (the "AAA") to appoint a single appraiser." "The appraiser [was to] provide a written appraisal and [ ] determine the Fair Market Value of the Membership Interest without deduction for its minority position and restrictions on transfer." "The determination of the appraiser [was to] be final and binding upon the parties and the closing of the sale [was to] be completed within thirty (30) days of receiving the appraiser's determination."

Further, under the employment agreement,

notices and all other communications provided for herein [were to] be in writing and [were to] be deemed to have been duly given (a) when received if delivered personally or by courier, (b) on the date receipt [was] acknowledged if delivered by certified mail, postage prepaid, return receipt requested, or (c) one day after transmission if sent by facsimile transmission with confirmation of transmission, as follows:

If to Employee [Kraft], addressed to: 1114 Birch Hill, San Antonio, TX

If to Company [Grupo], addressed to: 108 N. Mesquite Street, Corpus Christi, TX 78401

or to such other address as either party may furnish to the other in writing in accordance herewith, except that notices or changes of address shall be effective only upon receipt.

 **\*2**  On November 17, 2014, Kraft, individually and as a member on behalf of Grupo, sued Hodge and Hart for breach of contract, tortious interference with contract, and breach of fiduciary duty. He alleged that Hodge and Hart "caused Grupo to terminate [Kraft]'s employment on June 6, 2014." Kraft also alleged that the employment contract's option to repurchase his shares was not exercised within thirty days of his termination. According to Kraft's petition, after the option period, Hodge and Hart delivered a letter to him offering to buy his membership interest for $10.00. Kraft alleged that when he contacted them "to reject such an obviously frivolous repurchase offer," Hodge and Hart "threatened [Kraft] that they would take actions to render his ownership interest in Grupo worthless if he did not sell, even though he was under no obligation to divest his share."

In response to the lawsuit, Hodge and Hart filed a Motion to Compel Appraisal and Abate Lawsuit. They contended that Kraft resigned from his position on or about June 6, 2014, and that Grupo exercised its option to repurchase Kraft's 100 units of membership interest on July 3, 2014, when Hodge wrote a letter on behalf of Grupo offering to pay Kraft $10 for his membership interest. Hodge and Hart claimed that Kraft failed to comply with the Employment Agreement because Kraft failed "to agree to appoint an appraiser to determine the fair market value of his membership interest or, if no agreement could be reached, allowing the AAA to appoint an arbitrator." Instead, according to Hodge and Hart, Kraft "completely ignored his contractual obligations and filed the instant lawsuit." Hodge and Hart requested that the trial court grant their motion and abate the lawsuit until the appraisal occurs." In support of their motion, Hodge and Hart attached a copy of the Company Agreement; the Employment Agreement; a letter on Grupo's letterhead from Hodge to Kraft dated July 3, 2014; and affidavits from Hodge, Kenneth Rourke, and Haley Bennet.

According to these affidavits, on July 3, 2014, Hodge prepared a letter on behalf of Grupo, which stated that pursuant to the provisions of the employment agreement Grupo was exercising its option to repurchase Kraft's 100 units of membership interest in Grupo. The letter proposed a fair market value of $10 for the 100 units and asked Kraft to sign the letter memorializing the agreement. The letter further stated that if Grupo failed to receive the signed letter from Kraft within thirty days, it would assume that he disagreed with the fair market value of the units and that he intended to invoke the mechanisms under the employment agreement for determining the fair market value of the units.

In his affidavit, Gary Hodge affirmed that on July 3, 2014, he "personally hand-delivered a letter to [Kraft]'s address as listed in the Employment Agreement—1114 Birch Hill, San Antonio, Texas 78232—exercising Grupo Habanero, LLC's option to repurchase [Kraft]'s 100 units of membership interest." The affidavit stated that Hodge "hand delivered" the letter by knocking "on the front door at the 1114 Birch Hill address two or three times." When "[n]o one answered the door," Hodge "then scotched

taped the letter to the door." In his affidavit, Kenneth Rourke, Chief Operating Officer of Grupo, affirmed that on July 3, 2014, he accompanied Hodge to 1114 Birch Hill and watched as Hodge knocked on the front door two or three times. When no one answered the door, he watched Hodge scotch tape the letter to the door.

Haley Bennet, the former Director of Finance and Accounting for Grupo, affirmed in her affidavit that either she or Hodge "delivered the option exercise letter by email to [Kraft] on July 3, 2014." Bennet affirmed that she or Hodge "used an email address for [Kraft] that [they] had used before and ... knew to be accurate." Bennet affirmed that she and Hodge "knew this email was delivered to [Kraft]'s email address ... because it did not bounce back."

**\*3** In response to Hodge and Hart's motion to compel appraisal, Kraft argued that Hodge and Hart failed to timely exercise the purchase option in the employment agreement. According to Kraft, when they realized they had not timely exercised their option, they "began to make threats against [Kraft]'s interest." They "engaged in oppressive conduct to freeze out [Kraft], including denying him access to the financial records of the company to which he is entitled by law." As evidence in support of his response, Kraft attached the Company Agreement; the Employment Agreement; the July 3, 2014 letter; and his own affidavit.

In his affidavit, Kraft affirmed that he lived at 1115 Birch Hill, not 1114 Birch Hill, and that the Employment Agreement contained "a scrivener's error." He stated that he "notified Defendants of this error prior to [his] termination." He affirmed that the letter written by Hodge on behalf of Grupo "was not personally delivered to [him]" and that he "did not become aware of the letter within 30 days of [his] termination." He also affirmed that he "did not receive the letter by facsimile transmission"; nor did he "receive the letter by U.S. certified mail, return receipt requested within 30 days of [his termination]."

At the hearing on the motion, no testimony was given. The trial court denied Hodge and Hart's motion to compel appraisal and abate lawsuit. Hodge and Hart then filed a notice of interlocutory appeal.

## DISCUSSION

**[1]  [2]  [3]** Hodge and Hart argue the trial court abused its discretion in denying their motion to compel appraisal, arguing that the "Texas Supreme Court has enunciated a strong policy in favor of enforcing appraisal clauses in contracts." Kraft responds that this court lacks jurisdiction to hear this interlocutory appeal of an order denying a motion to compel appraisal. Unless a statute authorizes an interlocutory appeal, we generally have jurisdiction only over final judgments. *CMH Homes v. Perez,* 340 S.W.3d 444, 447 (Tex.2011). And, we strictly apply statutes granting interlocutory appeals because they are a narrow exception to the general rule that interlocutory orders are not immediately appealable. *Id.* In their notice of appeal and in their reply brief, Hodge and Hart contend that we have jurisdiction pursuant to section 171.098 of the Texas Civil Practice and Remedies Code.

Section 171.098 provides, in relevant part, that a party may appeal an order "denying an application to compel arbitration made under Section 171.021." TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(1) (West 2011). Section 171.021 states that a "court shall order the parties to arbitrate on application of a party showing: (1) an agreement to arbitrate; and (2) the opposing party's refusal to arbitrate." *Id.* § 171.021(a). Here, Hodge and Hart did not file a motion to compel arbitration; they filed a motion to compel appraisal and abate the lawsuit. In their reply brief, they recognize that their motion was not, in fact, a motion to compel arbitration, but claim that the "appraisal provision in the employment contract is *in essence* an arbitration provision." (emphasis added).

In support of their argument, Hodge and Hart cite *Vanguard Underwriters Insurance Co. v. Smith,* 999 S.W.2d 448, 451 (Tex.App.–Amarillo 1999, no pet.), claiming that it stands for the proposition that an appraisal contract provision, whether invoking an appraiser appointed by the American Arbitration Association or not, "is in essence one requiring arbitration." *Vanguard Underwriters* was not brought in the context of an interlocutory appeal, but was a mandamus proceeding where the relator, an insurance company, sought relief from the trial court's denial of its motion to compel its insureds to submit to an appraisal and to abate the underlying lawsuit until the appraisal was completed. *Id.* at 449. The insureds claimed the insurance

contract was unconscionable and void for fraud or duress. *Id.* at 451. In determining whether a writ of mandamus should be granted, the court considered "the narrow question" of "whether the provision of the contract requiring the [insureds] to submit to the specified appraisal procedural [was] enforceable." *Id.* The court explained that "[b]ecause the provision with which we are concerned is, in its essence, one requiring arbitration, cases considering such clauses are *instructive* to us" in deciding whether the appraisal provision in the contract was enforceable. *Id.* (emphasis added). It then noted that a "party seeking arbitration must establish the existence of an arbitration agreement and show that the claims raised fall within the scope of the agreement." *Id.* And, once a party established a claim within the arbitration agreement, a "trial court must compel arbitration and stay its own proceedings." *Id.* The court then looked at the insurance contract and concluded that under its provisions, the insurance company was "clearly entitled to have the appraisal procedure followed and the underlying suit abated until the completion of that procedure." *Id.* The court then conditionally granted the writ of mandamus. *Id.* Thus, while *Vanguard* looked to arbitration cases for guidance, *Vanguard* does not stand for the proposition that an appraisal provision in a contract is an arbitration provision that is subject to an interlocutory appeal pursuant to section 171.098.

 **\*4** Hodge and Hart also claim that "[a]ppointment of an arbitrator to resolve a dispute over value is clearly authorized by the Texas Arbitration Act and the appraisal requirement of a contract [is] now generally considered to be a form of arbitration." They cite *Laas v. State Farm Mutual Insurance Co.,* No. 14–98–00488–CV, 2000 WL 1125287, at \*5 (Tex.App.–Houston [14th Dist.] 2000, pet. denied), in support of this assertion. As in *Vanguard, Laas* did not concern an interlocutory appeal. *See Laas,* 2000 WL 1125287, at \*1. *Laas* involved an appeal from a final judgment. *Id.* Thus, *Laas* also does not stand for the proposition that an appraisal provision in a contract is an arbitration provision that is subject to an interlocutory appeal pursuant to section 171.098.

Hodge and Hart cite *Laas* for the proposition that an appraisal provision in a contract is "now generally considered to be a form of arbitration." *Laas* concerned an automobile accident, which resulted in the plaintiffs suing their insurance company for underinsured benefits and for violations of the Texas Insurance Code. *Laas,* 2000 WL 1125287, at \*1. The insurance policy in that case provided that if the insurance company and the insured could "not agree on the amount of loss, either [could] demand an appraisal of the loss." *Id.* at \*3. "In this event, each party will select a competent appraiser." *Id.* "The two appraisers will state separately the actual cash value and the amount of loss." *Id.* "If they fail to agree, they will submit their differences to the umpire." *Id.* "A decision agreed to by any two will be binding." *Id.* The policy did not address the steps to be taken if neither appraiser could agree to an umpire. *Id.* Because the policy was silent on this issue, the trial court appointed an umpire itself. The insureds appealed, arguing the trial court had no authority to do so and "essentially wrote a new term into the insurance policy." *Id.* On appeal, the Fourteenth Court of Appeals noted that whether the appraisal provision of the contract authorized the trial court to appoint an umpire when the appraisers could not agree to an umpire was a question of interpretation of the contract. *Id.* The court of appeals, citing *Vanguard,* then reasoned that "[b]ecause the provision with which we are concerned is, in its essence, one requiring arbitration, cases considering such clauses are *instructive* to us in making our decision." *Laas,* 2000 WL 1125287, at \*3 (emphasis added). Thus, the Fourteenth Court of Appeals, like the *Vanguard* court, looked to arbitration cases for guidance. The Fourteenth Court of Appeals then ended its discussion with the following broad language: "the appraisal requirements *of an insurance policy* are now generally considered to be a form of arbitration." *Id.* at \*5. (emphasis added).

The Texas Supreme Court has explained that appraisal clauses "are uniformly included in most forms of property insurance policies" and now appear "in almost every homeowners, automobile, and property policy in Texas." *State Farm Lloyds v. Johnson,* 290 S.W.3d 886, 888 (Tex.2009). While such provisions are now commonplace in insurance policies, the supreme court has emphasized that the scope of appraisal is different from the scope of arbitration. In *Johnson,* it quoted a supreme court case from 1888 stating the following:

> But here the [appraisal clause] does not divest the courts of jurisdiction, but only binds the parties to have the extent or amount of the loss determined in a particular way, leaving the question of liability for such loss to be determined, if necessary, by the courts.

 **\*5** *Johnson,* 290 S.W.3d at 889 (quoting *Scottish Union & Nat'l Ins. Co. v. Clancy,* 71 Tex. 5, 8 S.W. 630, 631 (1888)) (alteration in original). The supreme court then noted that it had "repeated this distinction between *damage* questions for

appraisers and *liability* questions for the courts." *Id.* (emphasis added). The supreme court explained that most appraisal clauses in insurance policies direct the appraiser to decide the "amount of loss," but "not to construe the policy or decide whether the insurer should pay." *Id.* at 890. The supreme court concluded that "the scope of appraisal is damages, not liability." *Id.* Thus, appraisal provisions are different from arbitration clauses and cannot be construed to be one and the same.

We agree with Hodge and Hart that the Texas Supreme Court has held that "appraisal is intended to take place before suit is filed" and is "a condition precedent to suit." *Id.* at 894. In *Johnson,* the supreme court noted that "appraisals require no attorneys, no lawsuits, no pleadings, no subpoenas, and no hearings." *Id.* "It would be a rare case in which appraisal could not be completed with less time and expense than it would take to file the motions contesting it." [1] "Allowing litigation about the scope of appraisal before the appraisal takes place would mark a dramatic change *in Texas insurance practice,* and surely would encourage much more of the same." *Id.* (emphasis added). Thus, the supreme court has discussed in the insurance policy context that appraisals "should generally go forward without preemptive intervention by the courts." *Id.* at 895.

[1]    The underlying case, which involves the valuation of a business and not the simple valuation of property damage found in most insurance disputes, might be one of these rare cases.

 [4]   However, we can find no case in which the supreme court has held that an order denying a motion to compel an appraisal could be the subject of a permissible interlocutory appeal pursuant to section 171.098. Indeed, the supreme court's decision in *Johnson* was an appeal from a final judgment. *See Johnson,* 290 S.W.3d at 888 n. 2; *see also Sec. Nat'l Ins. Co. v. Waloon Inv., Inc.,* 384 S.W.3d 901, 904 (Tex.App.–Houston [14th Dist.] 2012, no pet.) (appeal from a final order, made final after a severance, which compelled a hotel owner to appeal in an appraisal under the terms of the insurance policy). Another supreme court case involving the issue of whether an insurer was entitled to enforcement of an appraisal clause arose in the context of a mandamus proceeding. [2] *See In re Universal Underwriters of Tex. Ins. Co.,* 345 S.W.3d 404, 412 (Tex.2011) (orig. proceeding) ("We have held that mandamus relief is appropriate to enforce an appraisal clause because denying the appraisal could vitiate the insurer's right to defend its breach of contract claim."); *see also In re Cypress Tex. Lloyds,* 419 S.W.3d 443, 445 (Tex.App.–Beaumont 2012, orig. proceeding) (conditionally granting petition for writ of mandamus for insurer in motion to compel appraisal context).

[2]    We note that in certain circumstances, we may treat an interlocutory appeal as a petition for writ of mandamus. *See CMH Homes,* 340 S.W.3d at 452–53. However, to do so, the party seeking appellate review must specifically request that its appeal be treated as a mandamus petition. *See id.* at 452. Here, Hodge and Hart have not requested us to consider their appeal, alternatively, as a petition for writ of mandamus. Accordingly, we will not construe their appeal as such.

Finally, we note that while the appraisal provision at issue in this case makes reference to the American Arbitration Association ("AAA"), it only does so for the purpose of the AAA appointing a single appraiser. Such language cannot be construed as the parties agreeing to submit their dispute to arbitration and thus cannot be considered an arbitration provision. [3]

[3]    We note that section 171.098 is not the only interlocutory appeal statute regarding arbitration. Section 51.016 of the Texas Civil Practice and Remedies Act provides that "[i]n a matter subject to the Federal Arbitration Act," a party may appeal from an interlocutory order "under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. § 16." TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West 2015). Hodge and Hart do not argue that the appraisal provision is one governed by the Federal Arbitration Act. However, because the issue before us is one of jurisdiction, which we have a duty to look at *sua sponte,* we note that for the same reasons expressed in this opinion, the appraisal provision is not an arbitration provision under the Federal Arbitration Act. Thus, section 51.016 cannot invoke the appellate jurisdiction of this court.

## CONCLUSION

 **\*6**  Having found no case law to support Hodge and Hart's position that we have jurisdiction over the trial court's interlocutory order, we conclude that we lack jurisdiction over this appeal. We therefore dismiss this appeal for lack of jurisdiction.

## All Citations

--- S.W.3d ----, 2015 WL 6735291

End of Document                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.